UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EWORLDTRADE, LLC,<br><br>Defendant. | CRIMINAL NO. 25-083 (ACR) |

# PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America, by and through the Department of Justice, Criminal Division, Money Laundering, Narcotics and Forfeiture Section (the "Office") and EWORLDTRADE, LLC (the "Defendant" or "Company"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by the Defendant's Operating Agreement for Member Managed Limited Liability Company as referenced in Attachment B, hereby submit and enter into this plea agreement (the "Agreement"). The terms and conditions of this Agreement are as follows:

## Term of the Defendant's Obligations Under the Agreement

1. Except as otherwise provided in Paragraphs 11 and 12 below in connection with the Defendant's cooperation obligations, the Defendant's obligations under the Agreement shall be effective for a period beginning on the date on which the Defendant pleads guilty and ending four years from the date the Court enters judgment in this case (the "Term"). The Defendant agrees, however, that in the event the Office determines, in its sole discretion, that the Defendant has knowingly violated any provision of this Agreement or failed to completely perform or fulfill any of its obligations under this Agreement, the Office, in its sole discretion, may impose an extension or extensions of the Term for up to a total additional time period of one year, without prejudice to the Office's right to proceed as provided in Paragraphs 30-33 below. Any extension of the Term extends all terms of this Agreement, including the Compliance Reporting Requirements described in Attachment D, except for the term of probation, which may be extended

only with approval from the Court, for an equivalent period. In the event the Office determines that the Defendant has ceased operations, the obligations set forth in Attachments C, D, and F shall be replaced with a letter signed under penalty of perjury in the District of Columbia by an authorized representative of the Defendant indicating that the business has ceased operations. In the event that, during the Term but after a representation of cessation of business operations, the Defendant begins to offer any product or service, all obligations set forth in this Agreement and its Attachments will return to effect and apply to the Defendant.

**The Defendant's Agreement**

2. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Defendant agrees to plead guilty to the Indictment in the above-captioned matter charging the Defendant with one count of conspiracy to distribute isotonitazene, a Schedule I controlled substance, and 100 grams or more of a mixture and substance containing a detectable amount of an analogue of N-phenyl-N- [1- (2-phenylethyl) -4-piperidinyl] propenamide, to wit, carfentanil, a Schedule II controlled substance, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(F), 960(b)(3) and 963. The Defendant further agrees to persist in that plea through sentencing and, as set forth below, the Defendant agrees to cooperate fully with the Office as set forth in Paragraphs 11 and 12.

3. The Defendant understands that to be guilty of this offense, the following essential elements of the offense must be satisfied:

a. First, there was an agreement between the Defendant and at least one other person to knowingly or intentionally distribute, isotonitazene and carfentanil, intending, knowing, or having reasonable cause to believe that such controlled substances would be unlawfully imported into the United States;

b. Second, the Defendant knew of the unlawful purpose of the agreement, meaning that the Defendant was aware of the nature of its conduct, and did not act through ignorance, mistake, or accident; and

c. Third, the Defendant joined in the agreement knowingly and willfully, that is, with the intent to further its unlawful purpose.

Further, to prove the specific drug weight allegation of 100 grams or more of carfentanil, the government must show that the offense involved the specific drug amount alleged and that the Defendant was responsible for or reasonably foresaw that specific drug weight.

4. The Defendant understands and agrees that this Agreement is between the Office and the Defendant, and does not bind any other Division or Section of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority. Nevertheless, the Office will bring this Agreement and the nature and quality of the conduct, cooperation, and remediation of the Defendant and its direct or indirect affiliates, successors, subsidiaries, and joint ventures to the attention of other prosecuting authorities or other agencies, as well as debarment authorities, if requested by the Defendant.

5. The Defendant agrees that this Agreement will be executed by an authorized corporate representative, here, the Defendant's Sole Owner and Managing Member, as referenced in Attachment B.

6. The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

7. The Office enters into this Agreement based on the individual facts and circumstances presented by this case and the Defendant, including:

a. The nature and seriousness of the Defendant's offense conduct, as described in the Statement of Facts, attached as Attachment A ("Statement of Facts"), including the Defendant's conspiring to distribute isotonitazene and carfentanil, knowing, intending, and having reasonable cause to believe that such substances would be unlawfully imported into the United

States. Specifically, as described in greater detail in Attachment A, through its public-facing website offering a business-to-business online marketplace, the Defendant knowingly and intentionally facilitated the sale of synthetic opioids, such as fentanyl, carfentanil, and nitazenes, and other controlled substances, knowing, intending, and having reasonable cause to believe that these controlled substances would be sold into the United States. For buyers who wanted to purchase controlled substances through the Defendant's website, the Defendant's agents would offer them various levels of paid memberships, ranging from $499 to $9,999 U.S. dollars per year; and in exchange for purchasing such memberships, the Defendant's agents helped these buyers, including those located in the United States, to purchase controlled substances through better access and visibility to sellers of controlled substances, and, for higher-level memberships, the vetting of and vouching for those sellers. The Defendant's agents also helped sellers of controlled substances sell their products, including by updating their lists of illicit products on the website. During the course of the charged conspiracy and through this business model, the Defendant knowingly and intentionally facilitated the sale of 10 grams of isotonitazene and the attempted sale of 1 kilogram of carfentanil to an undercover address located in the District of Columbia;

b. The Defendant did not receive voluntary disclosure credit pursuant to the Department's Corporate Enforcement and Voluntary Self-Disclosure Policy ("CEP"), or pursuant to U.S.S.G. § 8C2.5(g)(1), because it did not voluntarily and timely disclose to the Office the conduct described in the Statement of Facts;

c. The Defendant received credit for its cooperation with the Office's investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with its investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Defendant also received credit pursuant to the CEP for its cooperation by, among other things: (i) promptly collecting, analyzing, and organizing information at the request of the Office, including conducting interviews, reporting facts, and producing documents and information from overseas or otherwise outside the reach of the Office; (ii) providing timely updates on facts learned during

its internal investigation related to conduct described in the Statement of Facts; (iii) making detailed factual presentations to the Office;

d. The Defendant provided to the Office all relevant facts known to it, including information about the individuals involved in the conduct described in the Statement of Facts and conduct disclosed to the Office prior to the Agreement and information attributing facts to specific sources;

e. The Defendant also received credit pursuant to the CEP because it engaged in timely remedial measures, including (i) identifying the ability of agents or employees to design workarounds that enabled the explicit posting for sale or purchase controlled substances and listed chemicals and taking steps to ensure those workarounds cannot be employed in the future, if and when the Defendant resumes business operations; (ii) identifying modifications and enhancements of its safe measures to prevent the sale or purchase of controlled substances and listed chemicals, whether advertised explicitly or using coded language, to be implemented if and when the Defendant resumes business operations; and (iii) identifying and ensuring all individuals involved in the conduct underlying the charged offense will no longer provide any services to the Defendant if and when the Defendant resumes business operations;

f. The Defendant has enhanced and has agreed to enhance its compliance programs, policies, procedures, systems, and internal controls to address the conduct described in the Statement of Facts, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement;

g. Based on the Defendant's remediation and the state of its compliance program, and the Defendant's agreement to report to the Office as set forth in Attachment D to this Agreement ("Compliance Reporting Requirements"), the Office determined that an independent compliance monitor is unnecessary;

h. The Defendant has no prior criminal or civil enforcement history; and

i. The Defendant has agreed to continue to cooperate with the Office in any ongoing investigation as described in Paragraphs 11 and 12;

j. Accordingly, after considering (a) through (i) above, the Office has determined that the appropriate resolution of this case is a plea to the Indictment as described in Paragraph 2, a criminal fine of $12,000,000, which reflects a discount of 20% off the bottom end of the parties' agreed upon fine, absent the Defendant's ability to pay such a fine, taking into account the Defendant's cooperation and remediation, as well as its prior history, pursuant to the CEP;

8. The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

a. to plead guilty as set forth in this Agreement;

b. to abide by all sentencing stipulations contained in this Agreement;

c. to appear, through its duly appointed representative, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

d. to commit no further crimes;

e. to be truthful at all times with the Court;

f. to pay the applicable fine and special assessment;

g. to cooperate fully with the Office as described in Paragraphs 11 and 12; and

h. to continue to remediate and enhance its CSA compliance program as described in Paragraph 9, including but not limited to the minimum elements set forth in Attachment C of this Agreement; and

i. to report to the Office annually during the Term regarding remediation and implementation of the compliance measures described in Attachment C, prepared in accordance with Attachment D to this Agreement.

9. The Defendant represents that it has implemented and will continue to implement a compliance program that meets, at a minimum, the elements set forth in Attachment C. Thirty (30) days prior to the expiration of the Term, the Defendant, by its duly authorized representative, will certify to the Office, in the form of executing the document attached as Attachment F to this Agreement, that the Defendant has met its compliance obligations pursuant to this Agreement. The certification will be deemed a material statement and representation to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

10. Except as may otherwise be agreed by the parties in connection with a particular transaction, the Defendant agrees that in the event that, during the Term, the Defendant undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Defendant's operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Office's ability to determine a breach under this Agreement is applicable in full force to that entity. The Defendant agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Defendant shall provide notice to the Office at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Office shall notify the Defendant prior to such transaction (or series of transactions) if the Office determines that the transaction will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If at any time during the Term the Defendant engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Office may deem it a breach of this Agreement

pursuant to Paragraphs 30-33. Nothing herein shall restrict the Defendant from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Office.

11. The Defendant shall cooperate fully with the Office in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and any individual or entity referred to therein, as well as any other conduct under investigation by the Office at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term. At the request of the Office, the Defendant shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of the Defendant, its parent company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Office or other domestic or foreign law enforcement and regulatory authorities and agencies at any time during the Term. The Defendant's cooperation pursuant to this Paragraph is subject to applicable laws and regulations, including bank secrecy and data privacy, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Defendant must provide to the Office a log of any information or cooperation that is not provided based on an assertion of law, regulation, or privilege, and the Defendant bears the burden of establishing the validity of any such assertion. The Defendant agrees that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

a. The Defendant represents that it has timely and truthfully disclosed all relevant factual information about which the Defendant has any knowledge with respect to the Defendant's activities, those of its subsidiaries and affiliates, and those of its present and former

directors, officers, employees, agents, and consultants, relating to the conduct described in this Agreement and the attached Statement of Facts, as well as other conduct known by the Defendant to be under investigation by the Office at any time about which the Defendant has any knowledge. The Defendant further agrees that it shall promptly and truthfully disclose all factual information with respect to its activities, those of its affiliates, and those of its present and former directors, officers, employees, agents, and consultants related to the conduct described in this Agreement or the Statement of Facts about which the Defendant shall gain any knowledge or about which the Office has inquired or may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Office, upon request, any document, record, or other tangible evidence about which the Office may inquire of the Defendant, including evidence that is responsive to any requests made prior to the execution of this Agreement.

b. Upon request of the Office, the Defendant shall designate knowledgeable employees, agents, or attorneys to provide to the Office the information and materials described in Paragraph 11(a) above on behalf of the Defendant. It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

c. The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the Office, present or former officers, directors, employees, agents, and consultants of the Defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

d. With respect to any information, testimony, documents, records or other tangible evidence provided to the Office pursuant to this Agreement, the Defendant consents to any and all disclosures to other governmental authorities including United States authorities and

those of a foreign government of such materials as the Office, in its sole discretion, shall deem appropriate.

12. In addition to the cooperation obligations provided for in Paragraph 11 of the Agreement, during the Term, should the Defendant learn of any evidence or allegation of conduct that may constitute a criminal violation of U.S. federal law, the Defendant shall promptly report such evidence or allegation to the Office. Thirty (30) days prior to the end of the Term, the Defendant, by its duly authorized representative, will certify to the Offices in the form of executing the document attached as Attachment E to this Agreement that the Defendant has met its disclosure obligations pursuant to this Paragraph. Each certification will be deemed a material statement and representation by the Defendant to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

13. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable as specified in Paragraph 27 below, and that any restitution imposed by the Court will be due and payable in accordance with the Court's order. The Defendant further agrees to pay the Clerk of the Court for the United States District Court for the District of Columbia the mandatory special assessment of $400 per count within ten (10) business days of the date of sentencing.

**The United States' Agreement**

14. In exchange for the guilty plea of the Defendant, and the complete fulfillment of all its obligations under this Agreement, the Office agrees it will not file additional criminal charges against the Defendant relating to any of the conduct described in this Agreement and the attached Statement of Facts. This Agreement does not provide any protection against, and the Office may use any information related to the conduct described in the Statement of Facts against Defendant in, any prosecution or other proceeding relating to (a) obstruction of justice; (b) perjury or making a false statement; (c) any crime of violence or terrorism-related offense; or (d) a violation of any provision of Title 26 of the United States Code. This Agreement does not provide any protection

against prosecution for any future conduct by the Defendant or any of its direct or indirect affiliates, subsidiaries, officers, directors, employees, agents, or consultants, whether or not disclosed by the Defendant pursuant to the terms of this Agreement. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Defendant. The Defendant agrees that nothing in this Agreement is intended to release the Defendant from any and all of the Defendant's tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

15. Upon the implementation of the compliance commitments described in Attachment C, or another satisfactory showing of the implementation or enhancement of compliance measures to be determined in the Office's sole discretion at the time of sentencing, the Office agrees to return to the Defendant its website domain seized by the Office in connection with the Indictment in this case.

**Factual Basis**

16. The Defendant is pleading guilty because it is guilty of the charge contained in the Indictment. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Indictment and Statement of Facts are true and correct, that the Defendant is responsible for the acts of its officers, directors, employees, and agents described in the Indictment and Statement of Facts, and that the Indictment and Statement of Facts accurately reflect the Defendant's criminal conduct. The Defendant stipulates to the admissibility of the Statement of Facts in any proceeding by the Office, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding.

**The Defendant's Waiver of Rights, Including the Right to Appeal**

17. Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly

warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. The Defendant agrees that, effective as of the date the Defendant signs this Agreement, the Defendant will not dispute the Statement of Facts set forth in Attachment A, and that the Statement of Facts shall be admissible against the Defendant in any criminal case involving the Office and the Defendant, as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. In addition, the Defendant also agrees not to assert any claim under the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence), the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure), or the United States Sentencing Guidelines (including U.S.S.G. § 1B1.1(a)) that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence (in any form). Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against the Defendant for any purpose in any U.S. federal criminal proceeding if, even though the Office has fulfilled all of its obligations under this Agreement and the Court has accepted the guilty plea, the Defendant nevertheless withdraws its guilty plea.

18. The Defendant is satisfied that the Defendant's attorneys have rendered effective assistance. The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as provided in this Agreement.

19. The Defendant understands that, by pleading guilty, it is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be

filed; (e) to subpoena witnesses to testify on the Defendant's behalf; and (f) to confront and cross-examine witnesses against the Defendant.

20. The Defendant understands the law gives it a right to appeal the Defendant's guilty plea, conviction, and sentence. The Defendant agrees as part of the Defendant's plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum penalties for the offenses to which the Defendant is pleading guilty. The Defendant understands this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the Defendant's conviction and guilty plea, including arguments that the statutes to which the Defendant is pleading guilty are unconstitutional, and any and all claims that the Statement of Facts is insufficient to support the Defendant's guilty plea. The Defendant specifically gives up the right to appeal any fine, order of restitution, or probation.

21. Notwithstanding the Defendant's waiver of appeal, it will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The Defendant understands these circumstances occur infrequently and in almost all cases this agreement constitutes a complete waiver of all appellate rights.

22. In addition, regardless of the sentence the Defendant receives, the Defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

23. This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b). The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a. The Defendant waives all defenses based on the statute of limitations

and venue with respect to any prosecution related to the conduct described in the Statement of Facts or the Indictment, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of the Agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Defendant further waives the right to raise on appeal or on collateral review any argument that the admitted conduct does not fall within the scope of the statutes of conviction. The Office is free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

**Penalty and Sentencing Recommendation**

24. The statutory maximum sentence that the Court can impose for a conspiracy to manufacture and distribute isotonitazene and carfentanil for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(F), 960(b)(3) and 963, is: a fine of not to exceed the greater of that authorized in accordance with the provisions of title 80 or $50,000,000 (21 U.S.C. § 960(b)(1)) and a mandatory special assessment of $400 (18 U.S.C. § 3013(a)(2)(B)).

25. The parties agree that pursuant to *United States v. Booker*, 543 U.S. 22 (2005), the Court must determine an advisory sentencing guideline range pursuant to the U.S. Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the Sentencing Guidelines and the factors listed in 18 U.S.C. § 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient

to satisfy the applicable burden of proof. The Defendant also understands that if the Court accepts this Agreement under Fed. R. Crim. P. 11(c)(1)(C), the Court is bound by the sentencing provisions in Paragraph 26.

26. The Office and the Defendant agree that because violations of 21 U.S.C. §§ 959 and 963 are not covered under U.S.S.G. § 8C2.1, an appropriate fine, applying the provisions of 18 U.S.C. § 3553, 18 U.S.C. § 3572, and U.S.S.G. § 8C2.10, and considering the factors set forth therein pursuant to U.S.S.G. § 8C2.10, including the Defendant's representations about, and FTI Consulting, Inc.'s ("FTI") analysis of, the Defendant's ability to pay a fine, is $1,350,000.

27. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Office and the Defendant agree that the following represents the appropriate sentence in this case:

a. Disposition: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Office and the Defendant agree that the appropriate disposition of this case is as set forth above, and agree to recommend jointly that the Court at a hearing to be scheduled at an agreed-upon time impose a sentence requiring the Defendant to pay a criminal fine, as set forth below.

b. Criminal Fine: The parties agree, based on the application of 18 U.S.C. § 3553, 18 U.S.C. § 3572, and U.S.S.G. § 8C2.10, and absent the Defendant's inability to pay such a fine, that the appropriate total criminal fine is $15,000,000, reduced by 20% for the Defendant's cooperation to $12,000,000. The Defendant has represented and provided supporting evidence, including an analysis prepared by FTI, to the Office, that the Defendant has an inability to pay a $12,000,000 criminal fine. Based on those representations and FTI's analysis, the parties agree that a criminal fine of $1,350,000 is appropriate. Nothing in this Agreement shall be deemed an agreement by the Office that $ 1,350,000 is the maximum penalty that may be imposed in any future prosecution, and the Office is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Office agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against

any fine the Court imposes as part of a future judgment. Payments towards the fine shall be made as directed by the Court.

c. Timing of Payment of Total Criminal Fine: The Defendant agrees to pay $260,000, equal to 20% of the Total Criminal Fine no later than seven (7) business days after entry of the judgment by the Court. The Defendant shall pay the remaining 80% of the Total Criminal Fine in, at minimum, equal annual payments of $260,000, for the next four years from the entry of the judgment by the Court, for a total of five equal payments. The Defendant may choose to pay the Total Criminal Fine earlier than this four-year installment plan.

d. Mandatory Special Assessment: The Defendant agrees to pay a special assessment of $400 within ten (10) business days of the date of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office. The Defendant understands that this Agreement is voidable at the option of the Office if it fails to pay the assessment prior to the sentencing hearing.

e. Probation: The Office and the Defendant agree that a term of organizational probation for a period of four years shall be imposed on the Defendant pursuant to 18 U.S.C. §§ 3551(c)(1) and 3561(c)(1). The parties agree, pursuant to U.S.S.G. § 8D1.4, that the term of probation shall include as conditions the obligations set forth in Paragraphs 8 (a) through (g) and 27 (a) through (e). If the Defendant pays the Total Criminal Fine before the termination of the probation term ordered by the Court, the Office will consider all relevant facts and circumstances in evaluating whether to agree to recommend to the Court early termination of the Defendant's probation.

28. This Agreement is presented to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn,

the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

29. The Defendant and the Office waive the preparation of a Pre-Sentence Investigation Report ("PSR") and intend to seek a sentencing by the Court immediately following the Rule 11 hearing in the absence of a PSR. Pursuant to Rule 32(c)(1)(A)(ii), the Defendant and the Office submit that the information in the record of this case, including the considerations set forth in Paragraph 7 of this Agreement and the detailed Statement of Facts to which the Defendant admits, enables the Court to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553. The Defendant understands that the decision whether to proceed with the sentencing proceeding without a PSR is exclusively that of the Court. In the event the Court directs the preparation of a PSR, the Office will fully inform the preparer of the PSR and the Court of the facts and law related to the Defendant's case.

**Breach of Agreement**

30. If, during the Term, (a) the Defendant commits any felony under U.S. federal law; (b) the Defendant provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) the Defendant fails to cooperate as set forth in Paragraphs 11 and 12 of this Agreement; (d) the Defendant fails to implement a compliance program and report to the Department as set forth in Paragraphs 9 and 10 of this Agreement and Attachments C and D; (e) the Defendant commits any acts that, had they occurred within the jurisdictional reach of the United States, would be a violation of federal controlled substance laws; or (f) the Defendant otherwise fails specifically to perform or to fulfill completely each of the Defendant's obligations under the Agreement, regardless of whether the Office becomes aware of such a breach after the Term, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, additional charges and/or civil forfeiture actions arising out of the conduct described in the Statement of Facts, distinct from the

charges in the Indictment described in Paragraph 2, as well as charges related to any additional conduct, if appropriate. Such charges may be pursued by the Office in the U.S. District Court for the District of Columbia or any other appropriate venue. Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant and/or a civil forfeiture action shall be in the Office's sole discretion. Any such prosecution and/or civil forfeiture action may be premised on information provided by the Defendant, its subsidiaries or affiliates, or the personnel of any of the foregoing. Any such prosecution and/or civil forfeiture action relating to the conduct described in the Statement of Facts or relating to conduct known to the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant and its subsidiaries and affiliates notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. The Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the term of the cooperation obligations provided for in Paragraphs 11 and 12 of the Agreement will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Office is made aware of the violation or the duration of the term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

31. In the event the Office determines that the Defendant has breached this Agreement, the Office agrees to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the

Defendant shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Office shall consider in determining next steps pursuant to Paragraph 30.

32. In the event that the Office determines that the Defendant has breached this agreement: (a) all statements made by or on behalf of the Defendant and its subsidiaries and affiliates to the Office or to the Court, including the Statement of Facts, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings and civil forfeiture proceedings brought by the Office against the Defendant and its subsidiaries and affiliates; and (b) the Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Office.

33. The Defendant acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and is subsequently prosecuted for any crime, or if the breach constitutes a violation of the Defendant's probation. The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion

**Public Statements by the Defendant**

34. The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Indictment and the Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraphs 30-33 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Indictment or the Statement of Facts will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Office. If the Office determines that a public statement by any such person contradicts in whole or in part a statement contained in the Indictment or the Statement of Facts, the Office shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Indictment and the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Indictment or the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

35. The Defendant agrees that if it or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between

the Office and the Defendant; and (b) whether the Office has any objection to the release or statement.

**Complete Agreement**

36. This document, including the attachments, states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

## APPROVALS AND SIGNATURES

A. **Defense Counsel:**

I have read this plea agreement and have discussed it fully with my client, EWORLDTRADE, LLC. I have fully advised my client of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of Abdulaziz M. Sema, Sole Owner and Managing Member of EWORLDTRADE, LLC, is an informed and voluntary one. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 11/9/2026 ______________________________

B. **Defendant's Authorized Representative:**

eWorldTrade, LLC, through its authorized representative, affirms that this document contains all the agreements made between eWorldTrade, LLC—with the assistance of counsel—and the Office regarding this plea. There are no other promises, assurances, or agreements the Office has made or entered into with eWorldTrade, LLC that has affected eWorldTrade, LLC's decision to enter any plea of guilty or to enter into this Agreement. If there are any additional promises, assurances, or agreements, eWorldTrade, LLC and the Office will jointly inform the Court in writing before eWorldTrade, LLC enters its guilty plea.

eWorldTrade, LLC understands that no one, including counsel for eWorldTrade, LLC, can guarantee the outcome of this case or what sentence the Court may impose if eWorldTrade, LLC pleads guilty. If anyone, including eWorldTrade, LLC's counsel, has done or said anything other than what is contained in this Agreement, eWorldTrade, LLC will inform the Court when it stands before the Court to enter its pleas.

As eWorldTrade, LLC's authorized representative, I understand the Court will ask me under oath to answer questions about the offenses to which eWorldTrade, LLC is pleading guilty and eWorldTrade, LLC's understanding of this plea agreement. I understand that I may be prosecuted if I make knowingly false statements or give false answers and may suffer other consequences set forth in this agreement.

On behalf of eWorldTrade, LLC, I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this Agreement on behalf of eWorldTrade, LLC or to enter the pleas on behalf of eWorldTrade, LLC. I enter into this Agreement knowingly and voluntarily. I understand that anything that I discuss with eWorldTrade, LLC's counsel is privileged and confidential and cannot be revealed without eWorldTrade, LLC's permission. Knowing this, I agree that this document will be filed with the Court.

eWorldTrade, LLC is fully satisfied with the representation given eWorldTrade, LLC by

the counsel for eWorldTrade, LLC, and I am prepared to repeat this statement at the time I stand before the Court and enter eWorldTrade, LLC's guilty plea. eWorldTrade, LLC's counsel and eWorldTrade, LLC have discussed all possible defenses to the charges to which eWorldTrade, LLC is pleading guilty. eWorldTrade, LLC's counsel has investigated eWorldTrade, LLC's case and followed up on any information and issues eWorldTrade, LLC has raised to eWorldTrade, LLC's satisfaction. eWorldTrade, LLC's counsel has taken the time to fully explain the legal and factual issues involved in this case to eWorldTrade, LLC's satisfaction. eWorldTrade, LLC's counsel and eWorldTrade, LLC have discussed the statutes applicable to eWorldTrade, LLC's offenses and sentence, as well as the possible effect the U.S. Sentencing Guidelines may have on eWorldTrade, LLC's sentence.

Based on eWorldTrade, LLC's complete understanding of this plea agreement, eWorldTrade, LLC therefore wishes to enter a plea of guilty to Count One of the Indictment filed in this case.

Dated: 11|09|2026

ABDULAZIZ M. SEMA
SOLE OWNER AND MANAGING MEMBER
EWORLDTRADE, LLC

**A. Attorneys for United States:**

I accept and agree to this plea agreement on behalf of the government.

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

Date: 11/9/26 By: ____________________

JAYCE BORN
MAX GOLDMAN
Trial Attorneys